Ashburn, J.
1. It is claimed that the district court erred in refusing to dismiss the petition in error, on the ground that that court had not acquired jurisdiction in error,for the reason that plaintiff in error had failed to file, or caused to be filed with his petition in error, the original papers and pleadings under section 517 of the code as amended. 67 Ohio L. 114-15.
The purpose of the amended section was to enable an aggrieved party to more speedily reach a reviewing court and lessen the amount of costs in proceedings in error. To this end it should be liberally construed. In this view, under that section, the complaining party may have his option whether he will prosecute his petition in error on an authenticated transcript of the docket, or journal entries, and final judgment rendered, together with the original papers and pleadings in the case, or upon an authenticated transcript of a complete record in the case. In either case, the object of the code is to have the record, or the material out of which the record is to be made, brought into the court of review.
The district court ruled correctly on the motion to dis *221 miss. There was found in that court, on the hearing, an authenticated transcript of a complete record, which necessarily included the journal entries and final judgment, tot gether with true copies of the original papers in the case. It appears that the original papers and pleadings were transferred from the office of the clerk of the common pleas court to "the files in the office of the clerk of the district court, on his own motiou, and were left in that court without additional file marks to evidence the filing of them. This objection is technical and unsound. The original papers were transferred to the district court files by the officer who had authority to do so. In the district court the identity and filing of the papers were proven by the affidavit of the clerk. Eile marks .are but evidence of the filing. If they had been “ either strung upon a thread, laid in a drawer or in a pigeon-hole,” in the district 'court clerk’s office, we conceive that they would be filed there within the terms of the law. Haines v. Lindsey, 4 Ohio, 90.
2. The demurrer avers a defect of parties, plaintiff and defendant.
The statute, in this class of cases (S. & O. 551), requires that “ all persons in being, who may be interested in the estate, or who may by the terms of the will, deed, or other instrument creating the entailment, thereafter become interested therein as heir, reversioner, or otherwise, shall be made parties to the petition.”
The petition in this case alleges that “ Harvey "Westfall departed this life, testate, leaving said plaintiff, his widow, and said Jacob II. Westfall, the husband of Emma West-fall, Sarah II. Starr, the wife of Stephen H. Starr, Mary E. Nimmons, the wife of Philip B. Nimmons, Elorence Whitehead, the wife of Charles Whitehead, and Sidney C. Gibbs, the wife of David W. Gibbs, the sole heirs at law.”
All the beneficiaries named in the will, and more, are included in this enumeration of parties, together with the executors elsewhere named in the petition. The averment that the group of persons named in the petition as being the “ sole heirs at law ” of the testator, substantially ex- *222 eludes the existence of others. The phrase is equivalent to alleging they are the only heirs, or all the heirs: We discover no such defect of parties, or defective averment in relation thereto, as will avail the demurrants on demurrer.
3. It is urged that the petition is defective, because it fails to aver and show that the plaintiff, Hannah, elected to take under the provisions of the will. For this reason, she can only be considered as having a dower estate in this land, and the statutes authorizing the sale or lease of entailments by express provision exclude “ estates in dower” from their operation.
When these proceedings were commenced, the plaintiffs were in possession, claiming under the will. From the probate of the will the time had long passed in which the widow could make her election, prior to the filing of this petition. In view of this fact, if an election was necessary to secure to her the provisions of the will, an election will be presumed from the acquiescence of the parties interested. Stockton v. Wooley, 20 Ohio St. 184.
For a more forcible reason I think this objection to the petition can not prevail. The plaintiffs take their estate under the will free from all consideration as to dower. It is a direct divise to Hannah Westfall and Jacob H. West-fall, jointly, determinable on the death or marriage of Hannah. The estate inures to them under the will for their use, and the right to receive, possess, and enjoy under this provision of the will is not contingent on Hannah’s election. They have their estate by virtue of the expressed intention of the testator.
Defendants claim the legal title to all the real estate named in the will, except that named in item 4, is vested, by the will, in the executors, to enable them to discharge the trusts created and confided therein to them.
A correct solution of this claim, to that extent, involves a construction of the will. The real estate named in item 2 of the will is that in which plaintiffs claim a life estate, unincumbered by any trust in the executors, with remainder in fee to the heirs at law of the testator. The executor’s *223 claim of title in trust appears, to us, a clear misconception of the terms of the will and the intention of the testator.
The power and title vested by the will in the executors must be found and determined by ascertaining the intention of the testator, as shown by and from a consideration of the whole instrument and all its parts.
The general power and duty of the executors are conferred by item 7. We are concerned, however, with only the last clause, in which they are authorized, “if it shall become necessary, in order to pay my just debts, to sell by private sale or in such manner, upon such terms of credit or otherwise, as they may think proper, all or any part of my real estate, and deeds to purchasers, to execute, acknowledge, and deliver in fee simple.” This is a general power for the performance of a specific duty, the execution of which might or might not be required to be executed. “ A mere direction in a will to executors to sell land is a naked power, and gives them no estate or interest in the land whatever, and, until the power is executed, the title to the laud descends to his heirs at law.” 3 Zabr. (N. J.) 447; 2 Ed. Ch. 156; Co. Litt. 42a; 9 Johns. 104; 1 Shep. Touch. 448 ; 19 Law Library, *233 ; Bissett on Estates for Life, 9. The demurrer admits the debts against the estate have all been paid, and that the executors have in their possession and control property and choses in action to an amount greater than will be required to satisfy all demands against the estate. Since no necessity can arise to call for an exercise of this naked power, under this general provision, the executors are vested with no title to this land.
In searching the will, it is found that, when the testator had in his mind the purpose to vest title in his executors, such intention appears in unmistakable terms — as in item 5. Here he devises to his children, naming them, lands in the State of Michigan, “ or their heirs forever, in equal proportions of the proceeds or avails.” Describes the land, and then declares: “ It is my desire that my executors herein appointed by me shall apportion and distribute all the property herein mentioned, to each and every heir *224 herein named, according to the tenor of this my will, and the strict rules of justice and equity.” By this item, the legal title to the Michigan land is vested in the executors. The trust, however, is limited to the lands named in this clause of the will. It can not be extended to another, without a clear disregard of the intention of the testator. The word “ herein,” used in this cause, whether applied to the beneficiaries, the power, or the will, should not be extended, by construction, to any clause than the one where it is found.
As to the real estate embraced in item 2, the language of the testator is wholly different. It is: “I give and bequeath to my said wife and my son, Jacob H. Westfall, the use of my farm (describing it), during the time that she, my wife, remains my widow; but, at the death of my said wife, or if she should intermarry with any other person after my decease, it is my will that the said aforementioned and described farm shall be sold, and the proceeds of the same be equally divided between my children, or their heirs forever, or that they, my said children, divide said farm to suit themselves, as they may think best.” No trust is here created. The executors are not alluded to. The estates created are a life estate in plaintiffs and an estate in remainder in fee in the heirs at law of the testator. On the termination of the life estates, the heirs at law are vested with an option to sell the land and divide the proceeds among the beneficiaries, or to divide the land equally among them, as they, the children, shall think best. To carry into effect the devise, the persons authorized to sell or divide the land should be, and are, vested with the legal title. It is urged that the statutes authorizing the lease and sale of estates tail for life, etc., are in conflict with the wills act, because destructive of the intention of the testator. We think not, for the reason that the testator must be regarded as making his will in reference to all existing laws affecting rights in property.
5. The estate created by the will is a life estate, determinable on the death or marriage of Hannah Westfall, re *225 mainder in the heirs at law of testator. ' The fact that the life estate may terminate on the marriage of the first doneerenders it none the less a life estate. Coke says: “ If a man grant an estate to a woman, dum sola fuit, or durante viduitate, or quam diu se bene gisserit, or to a man and a woman during the coverture, or as long as the grantee dwell in such a house, etc., or for any like uncertain time, which time, as Braeton saith, is tempas indelerminatum — in all1 these cases, if it be of lands or tenements, the lessee hath,, in judgment of law, an estate for life, determinable, if livery be made,” etc. Co. Litt. 42a; Bissett on Estates for Life, 7.
Having ascertained the nature of the estates created by the'will, and that they are clogged by no trust, we are to ascertain whether plaintiffs are entitled in law to the relief provided in the act of April 4, 1859, for the sale of estates in tail, and the acts of March 3, 1864, and April 13, 1865, supplementary thereto. The court of common pleas has jurisdiction conferred on it to order the sale of all estates tail for life in remainder, and all determinable estates,, whether such estate may be created by will, deed, or other-instrument of writing, or may be derived by the law of descent and distribution, under the statutes of this state, except estates in dower or by courtesy. This jurisdiction may be invoked by the first donee in tail for life, or doneeof a fee simple estate, determinable on the happening of any future event, etc., and may be exercised when the sale-would be for the benefit of the applicant, and do no substantial injury to the heirs in tail, or others in succession, reversion, or remainder or expectancy.
It has been determined that the acts herein cited, to the-extent that they affect estates created before their passage, are in conflict with section 19 of article 1 and section 28 of article 2 of the constitution, and, for that reason, are inop ■ erative upon estates which were created and became vested before their passage. Gilpin v. Williams, 25 Ohio St. 283. No such infirmity exists in these acts, in relation to the es *226 tates under consideration. They were created and vested subsequent to the passage of these acts.
While the general assembly may not constitutionally legislate so as to disturb acquired rights and vested estates, it has power to legislate upon the subjects embraced in the acts of 1859, 1864, and 1865. Without entering upon a discussion of the policy of such legislation, the estates embraced in these statutes are within the scope of legislative power, and if the act providing for and regulating the sale of such estates is in force at the time the estate is created, it will be considered as created subject to the provisions of the statute. In such case, there is no invasion of the rights of private property, and such statutes are not in conflict with section 19 of article 1 of the constitution, or the 28th section of article 2.
The legal right to have the relief provided in these acts is not dependent upon the consent of the owners of the estate in remainder, etc.
The legal right of a party to apply to a proper tribunal, for the relief provided by the statute, is an incident attaching to the estate. Granting the relief involves two questions of fact — one, the benefit of the applicant, the other, injury to the owner iu remainder, etc. The person creating the estates is pi’esumed to have intended a benefit to accrue to the first donee, so that when it is made to appear, from some cause, that the estate vested in such donee is not beneficial to him, and can be made so in another form of investment, without injury to the owner in remainder, reversion, etc., these statutes step in to the aid of the first donee, when they can do so without injury to the owner in remainder, reversion, etc.
The conclusion is that the court of common pleas erred in sustaining the demurrers, and the district court did not err iu taking jurisdiction in error, and reversing the judgment of the court of common pleas.
Day, J., did not sit in this case.